**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TYRONE DAVID MOSBY,

                Petitioner,

v.                                       Case No.  6:22-cv-109-WWB-LHP

SECRETARY, DEPARTMENT OF
CORRECTIONS, and ATTORNEY
GENERAL, STATE OF FLORIDA,

                Respondents.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Petitioner Tyrone David Mosby's Petition for Writ of Habeas Corpus ("**Petition**," Doc. 1) filed pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition ("**Response**," Doc. 13) in compliance with this Court's instructions. Petitioner filed a Reply to the Response ("**Reply**," Doc. 17).

Petitioner asserts eleven grounds of ineffective assistance of trial counsel and four grounds of trial court error. For the following reasons, the Petition is denied.

### I.   PROCEDURAL HISTORY

A jury found Petitioner guilty as charged of armed burglary with a firearm (Count One), two counts of attempted felony murder (Counts Two and Three), aggravated assault with a firearm (Count Four), shooting from a vehicle (Count Five), shooting at, within, or into an occupied vehicle (Count Six), and aggravated battery causing great bodily harm (Count Seven). (Doc. 15-1 at 143–52). The trial court sentenced Petitioner to imprisonment for thirty years on Counts One, Two, Three, and Seven, to twenty years on Count Two, and to fifteen years on Counts Five and Six with all terms to run concurrently.

(*Id*. at 527–30). Petitioner appealed, and the Fifth District Court of Appeal of Florida ("**Fifth DCA**") affirmed Petitioner's convictions but reversed the sentence for Count Seven and remanded for resentencing on that count. (*Id*. at 2155–56).

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which he amended. The state court denied some claims and ordered an evidentiary hearing on some claims. (*Id*. at 2868–2997). After the hearing, the state court denied the remaining claims. (*Id*. at 2701–11). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id*. at 3021).

## II.    LEGAL STANDARDS

### A.    Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A federal habeas court must identify the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr*., 828 F.3d 1277, 1285 (11th Cir. 2016). Where the state court's adjudication on the merits is unaccompanied by an explanation, the habeas court should "look through" any

unexplained decision "to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record it reviewed. *Id*. at 1192–93, 1195–96.

For claims adjudicated on the merits, "section 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). "For a state-court decision to be an 'unreasonable application' of Supreme Court precedent, it must be more than incorrect—it must be 'objectively unreasonable.'" *Thomas v. Sec'y, Dep't of Corr.*, 770 F. App'x 533, 536 (11th Cir. 2019) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). If a state judge fails to resolve the merits of a claim, however, no deference is warranted under § 2254(d)(1). *Calhoun v. Sec'y, Fla. Dep't of Corr.*, 607 F. App'x 968, 970–71 (11th Cir. 2015) (citing *Davis v. Sec'y for Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003)).

Under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court is presumed correct, and the habeas petitioner must rebut the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

Where the state court applied the correct Supreme Court precedent, the federal court must consider whether the state court unreasonably applied that precedent or made an unreasonable determination of the facts. *Whatley v. Warden*, 927 F.3d 1150, 1181 (11th Cir. 2019). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 1175 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Federal courts may review a claim *de novo* only if the state court's decision was based on an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. *Id.*

### B.  Standard For Ineffective Assistance Of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief because his counsel provided ineffective assistance. 466 U.S. 668, 687–88 (1984). To prevail under *Strickland*, a petitioner must demonstrate "(1) that his trial 'counsel's performance was deficient' and (2) that it 'prejudiced [his] defense.'" *Whatley*, 927 F.3d at 1175 (quoting *Strickland*, 466 U.S. at 687).

Prejudice "requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

III.  ANALYSIS

A. Ground One

Petitioner contends that the trial court erred by denying his motion for a new trial based on several *Brady*[1] violations. (Doc. 1 at 4–5). To support this ground, Petitioner argues that the State failed to disclose (1) the recorded statement of Amon Mitchell ("**Mitchell**"), wherein he identified another person to be the person who shot Danielle Sampson ("**Sampson**"), (2) the recorded interview of Chester Joseph ("**Joseph**"), one of the victims and the person who identified Petitioner as one of the perpetrators of the offenses, (3) the statement of one of Petitioner's co-defendants in a racketeering case regarding who was in the vehicle involved in the offenses on that date, and (4) a video from a trap house on the date of the offenses showing Petitioner's co-defendant in the racketeering case enter the vehicle involved in the offenses. (*Id.*).

Petitioner raised this ground in his motion for a new trial. The trial court conducted an evidentiary hearing after which it summarily denied relief after considering the evidence presented and the attorneys' arguments. (Doc. 15-1 at 1020–21). The trial court noted that there was a time gap between the trap house video and the commission of the offenses in this case. (*Id.* at 1021). The Fifth DCA summarily affirmed the trial court's

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

denial of Petitioner's motion for new trial without discussion. (*Id*. at 2155–56).

At the evidentiary hearing, the defense presented portions of the August 15, 2012, recorded conversation between Mitchell, Joseph, and police detectives. In the interview, Mitchell told Joseph and the detectives that he heard from others that Sutton, a person with dreads, was the individual who shot Sampson. (*Id*. at 706–14). Mitchell further said that he heard that Petitioner was the driver of the vehicle involved in the shootings, Sutton was the shooter, and Tray Roberts was in the backseat of the vehicle. (*Id*. at 714–16). Mitchell, however, admitted that he did not know if this was true, but instead it was just what he had heard. (*Id.*).

The defense further presented portions of Joseph's August 11, 2012, recorded statement, in which his cousin, Mike Sims-Walker ("**Walker**"), told Joseph that he needed to tell the police what he knew because they were talking about arresting Joseph for obstruction. (*Id*. at 729–33). A detective also told Joseph that they had heard that others had seen a pound of marijuana being sold from the burglarized house that Joseph maintained for others and stayed at sometimes. (*Id*. at 736–41). Joseph, however, indicated that the most marijuana he had seen at the house was half an ounce for personal use, but he indicated that his cousin, who sometimes stayed at the house, was a mid-level drug dealer. (*Id*. at 736, 752–53). During the interview, Joseph ultimately admitted that he had lied by telling the police that the house had not been burglarized. (*Id*. at 741).

The defense next presented evidence that one of Petitioner's co-defendants in a racketeering case told detectives that he had seen the vehicle used during the offenses on the date of the offenses. (*Id*. at 950). According to Petitioner's co-defendant, Timothy

Hobby ("**Hobby**") picked the co-defendant up in the vehicle at a trap house and gave him a ride to a gas station about a mile away where Hobby dropped him off. (*Id.* at 950, 956). Petitioner's co-defendant indicated that he and Hobby were the only people in the vehicle. (*Id.* at 956). Finally, the defense presented video evidence from the date of the offenses at 5:30 p.m. showing Petitioner's co-defendant at the trap house getting into the passenger side of the vehicle used in the offenses, someone getting into the driver's side, and the vehicle leaving at 5:31 p.m. (*Id.* at 964–65).

To demonstrate a *Brady* violation, the defendant must show: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "*Brady*'s prejudice prong, also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Mitchell's statements on August 15, 2021, were hearsay and were not based on his personal knowledge. Further, Mitchell's statements were not exculpatory because they were consistent with the evidence presented at trial that Petitioner was the driver of the vehicle from which someone fired shots that hit Sampson.

As to the August 11, 2012, statements made by Joseph and Walker, they were not

exculpatory. However, the August 11, 2012, statements could have been used to impeach Joseph regarding why he lied to police before he ultimately admitted that the house was burglarized and then identified Petitioner as the driver and person who shot at him. Nevertheless, at trial Joseph admitted that he lied repeatedly to the police, and defense counsel thoroughly cross-examined Joseph, eliciting testimony that his cousin was a mid-level drug dealer who stayed at the house and that he (Joseph) felt pressured by police. Defense counsel also questioned Joseph concerning his untruthfulness, criminal history, and the various reasons he gave for lying to the police. (*See* Doc. 15-1 at 1295–1306, 1337–87). Considering that Joseph's credibility was amply impeached at trial, a reasonable probability does not exist that the result of the trial would have been different had the August 11, 2012, statements been disclosed to the defense.

Finally, the trial court reasonably could have concluded that Petitioner's co-defendant's statement that Hobby drove the vehicle on the date of the incident and gave him a ride were not exculpatory or otherwise that a reasonable probability did not exist that this evidence would have resulted in a different outcome. As noted by the trial court, the video from the trap house was an hour before the offenses occurred in this case. Further, evidence was presented at trial that at least two individuals were in the vehicle at the time of the offenses. If the co-defendant's assertion that Hobby dropped him off at a gas station a mile away from the trap house was true, then Hobby would have been alone in the vehicle. Consequently, clearly other individuals entered the vehicle after Hobby dropped off Petitioner's racketeering co-defendant, and Hobby could have exited the vehicle or not been the driver of the vehicle. Giving the deference required to the state court's denial of this ground, Petitioner has not shown that the co-defendant's statement

and the trap house video are exculpatory or that prejudice resulted from their non-disclosure. Accordingly, Ground One is denied under § 2254(d).

### B. Grounds Two and Five Through Fifteen

In Ground Two, Petitioner asserts that the trial court erred in finding that *Haliburton v. State*, 561 So. 2d 248, 250 (Fla. 1990),[2] prohibited defense counsel from arguing that the State tailored the evidence because it did not call Virginia Anderson ("**Anderson**") as a witness. (Doc. 1 at 5). In Grounds Five through Fourteen, Petitioner contends that trial counsel was ineffective for (1) failing to seek a retroactive competency determination (Ground Five), (2) giving improper advice that caused him not to testify (Ground Six), (3) failing to object to the consolidation of the charges (Ground Seven), (4) failing to object to Count One on the basis that it was charged using language from the prior version of section 810.02(2)(b), Florida Statutes (Count Eight), (5) failing to move to dismiss the information because it charged a non-existent crime as to Count One (Ground Nine), (6) failing to request a jury instruction on the lesser offense of trespass as to Count One (Ground Ten), (7) failing to file a motion to suppress the photographic line-up identification (Ground Eleven), (8) failing to call Mitchell and Walker as witnesses (Ground Twelve), (9) failing to argue in closing that the State failed to prove Petitioner actually possessed a firearm (Ground Thirteen), and (10) failing to move for a judgment of acquittal because the evidence was "insufficient absent an improper pyramiding of the evidence" (Ground Fourteen). (*Id*. at 7–14). Ground Fifteen alleges that the cumulative effect of trial counsel's errors deprived Petitioner of a fair trial. (*Id.* at 14).

---

[2] (concluding that the trial court did not err in limiting the defense's comments about the prosecution's failure to call a witness because "the witness was equally available to both parties").

Ground Two is procedurally defaulted because it was not raised as a federal issue in the state court and Petitioner did not cite or rely on federal law to support it. (*See* Doc. 15-1 at 2045, 2084–85); *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457–59 (11th Cir. 2015) (holding that the petitioner failed to exhaust his federal sufficiency of the evidence claim in state court because he did not present it as a federal claim or cite or rely on federal law). Further, although the lower court denied Grounds Five through Fifteen, Petitioner did not argue on appeal that the lower court erred by denying the merits of the grounds. (*See* Doc. 15-1 at 2672–88). Rather, Petitioner's counsel filed an *Anders*[3] brief and then a Supplemental Brief in which the only argument raised was that "[t]he trial court erred by summarily denying claims 3, 4, 5, 7, and 8 of [Petitioner's] April 16, 2018, motion and claims 9 and 10 of [Petitioner's] January 9, 2018, motion, *without attaching the records* that conclusively refute [his] claims." (*Id.* at 2686 (emphasis added)). In response, the State sought to supplement the record with the corrected initial Rule 3.850 Order and attachments, and the Fifth DCA granted the motion after which the circuit court clerk supplemented the record with the order and attachments. (*Id.* at 2868–2997). Thereafter, the State filed an Answer Brief noting that the record had been supplemented and the only ground Petitioner raised was that the trial court failed to attach the portions of the record it relied upon in summarily denying seven of his claims. (*Id.* at 3014). The State, therefore, declined to file a response unless directed to do so because Petitioner had raised no other issues. (*Id.*). Petitioner's counsel then filed a notice indicating that he would not file a reply brief. (*Id.* at 3018).

Petitioner did not argue on appeal that the lower court erred by denying any of his

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

3.850 claims. Petitioner's failure to specifically raise these claims on the merits on appeal resulted in the abandonment of the claims. *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding the failure to argue a claim in an initial brief on appeal following the denial of a Rule 3.850 motion after an evidentiary hearing results in the abandonment of that claim); *Cottrell v. Sec'y, Dep't of Corr.*, 317 F. App'x 942, 943–44 (11th Cir. 2009) (holding that appellate counsel's mention of claims in an *Anders* brief without arguing that the petitioner was entitled to relief on these claims constituted an abandonment of the claims such that they were procedurally barred from review). Therefore, Grounds Five through Fifteen were not properly exhausted in the state court.

Absent exceptional circumstances, federal courts are precluded from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). A federal habeas court is also precluded from considering claims that are not exhausted but clearly would be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *Wright v. Hopper*,

169 F.3d 695, 703 (11th Cir. 1999). "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Id*. Finally, to establish the requisite "prejudice" to warrant review of a procedurally defaulted claim, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

The second exception involves a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). This exception only occurs in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. Here, actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner has not demonstrated cause and prejudice to overcome his procedural default of these grounds. Likewise, he has not established that he is actually innocent. Therefore, Grounds Two and Five through Fifteen are procedurally barred and denied.[4]

### C. Ground Three

Petitioner contends he was denied his right to the assistance of counsel because the trial court limited counsel's closing argument on his theory of defense. (Doc. 1 at 5–6). Specifically, Petitioner complains that the trial court erred by sustaining the prosecutor's objection when defense counsel argued that Joseph, one of the victims,

---

[4] Alternatively, assuming Grounds Five through Fifteen were exhausted and are not procedurally barred, they are denied on the merits because Petitioner has not demonstrated that the state court's denial of the grounds is contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

acted like a guilty person and that sufficient evidence had been presented for the jury to find that Joseph was the person who shot Sampson.[5] (*Id.* at 6).

Petitioner raised this ground on direct appeal. The Fifth DCA affirmed the trial court's ruling. (Doc. 15-1 at 2155–56).

Petitioner has not demonstrated that the state court's denial of this ground is contrary to, or an unreasonable determination of, clearly established federal law. Under Florida law, "an attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)).

At trial, Joseph testified that Petitioner was driving the SUV he observed at the house on Robbins Avenue that he (Joseph) maintained for others and stayed at sometimes. According to Joseph, after Petitioner fired shots at his truck, he followed the vehicle around the block onto North Lane going toward Powers, and someone in Petitioner's vehicle fired additional shots. (Doc. 15-1 at 1265, 1273–78, 1286–88, 1307,

---

[5] The evidence presented at trial established that Sampson was in the back of a minivan that was traveling on Powers Drive toward North Lane when she was shot. (Doc. 15-1 at 1214). Sampson's father, who was driving the minivan, observed a vehicle speeding toward them coming from North Lane, and soon thereafter he heard several gunshots. (*Id.* at 1215). Sampson's father told police that he observed another car following the first one at the intersection of Powers and North Lane and indicated that they both appeared to be shooting at each other. (*Id.* at 1221–23). Sampson's father, however, did not see anyone from either vehicle firing shots. (*Id.* at 1223–24).

Beverly Hearne ("**Hearne**") also testified that she was driving on Powers Drive toward North Lane on the date of the offenses. (*Id.* at 1449). She said she observed an SUV on Powers Drive coming from North Lane driving recklessly. (*Id.* at 1449–52). She also saw someone in the SUV lean out the back window of the vehicle and fire shots. (*Id.*). Hearne said that there was a car behind the SUV. (*Id.* at 1454). Joseph was driving a truck at the time of the offenses.

1311–17, 1699). Joseph testified that he did not follow Petitioner's vehicle after it turned onto Powers. (*Id.* at 1291–92). Anderson, Petitioner's neighbor, testified that Joseph told her he fired shots at Petitioner's vehicle during the incident. (*Id.* at 1661–62). Anderson, however, did not testify that Petitioner indicated where he was when he fired shots. Joseph denied firing a gun during the incident or telling Anderson that he had done so. (*Id*. at 1293, 1368–69, 1697–98).

During closing argument, defense counsel stated "[y]ou have enough evidence in front of you to believe that Mr. Joseph was the one who shot Danielle Sampson." (*Id.* at 1772). The State objected arguing that there was no evidence of this, and the trial court sustained the objection. (*Id*.). The defense then argued that Joseph was involved in the car chase and Anderson said that Joseph indicated that he was shooting. (*Id*.).

Considering the trial testimony, no evidence was presented demonstrating that Joseph followed Petitioner's vehicle onto Powers Drive, where Sampson was shot. Further, there was no evidence establishing that anyone observed another vehicle on Powers Drive other than the SUV from which an individual was shooting. Consequently, the trial court properly sustained the State's objection to the defense's statement that sufficient evidence had been presented from which the jury could find that Joseph shot Sampson. Furthermore, the defense was permitted to argue that the evidence demonstrated that Joseph was involved in the car chase and that he fired shots. Thus, assuming the trial court erred in sustaining the objection, a finding not made by the Court, the error was harmless. Accordingly, Ground Three is denied under § 2254(d).

### D.  Ground Four

Petitioner maintains that the trial court erred by finding him competent to proceed

to sentencing. (Doc. 1 at 6). According to Petitioner, the mental health experts based their finding of competency on an incorrect standard. (*Id*.). Particularly, he complains that the experts used a lesser level of mental competence than required by *Dusky v. United States*, 362 U.S. 402 (1960). (*Id.*). Petitioner notes that he was found incompetent to proceed to trial in another criminal case but competent to proceed to sentencing in the underlying criminal case. (*Id.*).

After his trial, Petitioner's counsel moved for a competency determination before sentencing. The trial court had a competency hearing and considered the testimony of three mental health experts, Drs. Olander, Otto, and Danziger. (*See* Doc. 15-1 at 903–25, 2722–60, 2780–2813). Noting that all three experts opined that Petitioner was competent to proceed to sentencing, the trial court found him competent. (*Id*. at 2004). The Fifth DCA summarily affirmed the trial court's ruling. (*Id.* at 2156).

"The legal test for mental competency is whether, at the time of trial and sentencing, the petitioner had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'" *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

At the competency hearing, Dr. Danziger testified that he used the *Dusky* standard to evaluate Petitioner's competency and concluded that Petitioner had "a rational and factual understanding of the proceedings against him and was able to consult with his attorney, with a reasonable degree of rational understanding, specifically looking at the issue of sentencing." (Doc. 15-1 at 910, 913–14). Similarly, Dr. Olander testified that Petitioner appreciated the penalties he faced, had the ability to relate to counsel, had an

understanding of the adversarial nature of the legal process, and was competent to proceed to sentencing. (*Id.* at 2733, 2745, 2756–57). Finally, Dr. Otto testified that he utilized the *Dusky* standard and found Petitioner competent to proceed to sentencing. (*Id.* at 2796–98). Consequently, Petitioner has not established that the mental health experts used a wrong standard to find him competent to proceed to sentencing or that the trial court erred by finding him competent. Accordingly, Ground Four is denied under § 2254(d).[6]

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find this Court's

---

[6] Any allegations not specifically addressed are without merit.

assessment of the constitutional claims debatable or wrong. Petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the Court will not grant Petitioner a certificate of appealability.

**V. CONCLUSION**

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on September 27, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party